IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION

NO. 5:11-CT-3051-FL

| | |
|---|---|
| LANCE ADAM GOLDMAN, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | ORDER |
| ) | |
| DOUG BRANNON, CHRISTEN ) | |
| DEGABRIELLE SIMMONS, BRIAN ) | |
| STRICKLAND, DWAYNE ) | |
| DRUMMOND, STERLING WEBSTER, ) | |
| AMANDA ESTES[1], JACKIE MANKO, ) | |
| and JEREMY MILLER, ) | |
| ) | |
| Defendants. ) | |

The matter is before the court on the motions to dismiss (DE 37, 75) filed by defendants Jackie Manko ("Manko"), Jeremy Miller ("Miller"), Amanda Estes ("Estes"), and Sterling Webster ("Webster") (collectively, the "hotel defendants"). Plaintiff responded to the first motion to dismiss.[2] Also before the court is the motion for judgment on the pleadings (DE 42) pursuant to Federal Rule of Civil Procedure 12(c) filed by defendants Dwayne Drummond ("Drummond") and Brian Strickland ("Strickland"), to which plaintiff responded. In this posture, the issues raised are

---

[1] The defendant identified by plaintiff as Amanda Mullens has informed the court that her correct name is Amanda Estes. The court will hereinafter refer to this defendant as Amanda Estes. The Clerk of Court is DIRECTED to amend the caption of this case as it is recorded in the court's electronic records to reflect this change.

[2] The time for responding to the second motion to dismiss has not yet run. However, for the reasons stated below, the court finds that a response is not required before ruling on the hotel defendants' first motion to dismiss.

ripe for adjudication. For the foregoing reasons, the court grants the hotel defendants' first motion to dismiss and the motion for judgment on the pleadings filed by Strickland and Drummond. The court denies as moot the hotel defendants' second motion to dismiss.

## STATEMENT OF THE CASE

On March 11, 2011, plaintiff, a state inmate incarcerated at Tabor Correctional Institution, filed this action *pro se* pursuant to 42 U.S.C. § 1983, against defendants Magistrate Doug Brannon ("Brannon"), Drummond, Assistant District Attorney Christen DeGabrielle Simmons ("Simmons"), and Strickland. Plaintiff alleged that his arrest by Strickland and Drummond for financial transaction card fraud and identity theft was not supported by probable cause. Plaintiff also alleged that Simmons and Strickland presented false and misleading evidence to the grand jury, which led to his wrongful indictment. As relief, plaintiff requests a declaration that defendants violated his constitutional rights, a preliminary and permanent injunction against Strickland and Drummond ordering that they cease violating his constitutional rights, and compensatory damages. Following its frivolity review, the court dismissed plaintiff's action against Simmons and Brannon.

The court subsequently granted plaintiff's motions to amend his complaint filed on February 17, 2012 and August 27, 2012,[3] to include claims against the hotel defendants. Plaintiff thereafter filed a motions to supplement his complaint on December 13, 2013, and June 19, 2013. The court denied plaintiff's December 13, 2013, motion to supplement/amend, but granted his June 19, 2013, motion to supplement/amend.

---

[3] Because the docket is unclear, the court notes that plaintiff's August 27, 2012, motion to amend is GRANTED.

2

On September 12, 2013, plaintiff filed a letter inquiring into the status of defendants' response to his June 19, 2013, amended complaint. The hotel defendants subsequently filed a motion to dismiss plaintiff's June 19, 2013, amended complaint. Strickland and Drummond filed an answer to plaintiff's June 19, 2013, supplemental/amended complaint.

## STATEMENT OF THE FACTS

On September 24, 2009, a man allegedly named Bryan Parker made an online reservation for a room for plaintiff at the Hilton Garden Inn in Kitty Hawk, North Carolina (the "Kitty Hawk Hilton") for September 27, 2009, through September 30, 2009. Am. Compl. (DE 33) ¶¶ 10-11. Parker allegedly made the reservation for plaintiff so that plaintiff could attend a court date, for unrelated charges, in Manteo. Id. ¶ 10.

Plaintiff arrived at the Kitty Hawk Hilton on September 27, 2009, and checked into the hotel under the name Bryan Parker. Id. ¶ 12. Plaintiff then signed his name as Bryan Parker on the hotel's check-in paperwork. Am. Compl. (DE 15), Ex. B. The hotel registration card identified plaintiff as having a blue "Murc" brand automobile. Id.

Bill Simmons, the manager of the Hilton Garden Inn in Winston Salem, North Carolina (the "Winston Salem Hilton") contacted Miller, an employee of the Kitty Hawk Hilton and informed Miller of "suspected illegal activity" involving plaintiff. Am. Compl. (DE 16) p. 2. Ex. B.[4] Due to the report of the suspicious conduct, Miller then contacted law enforcement officials. Id. p. 2.

---

[4] The law enforcement investigation report states as follows: "Simmons told Miller that [plaintiff] had run up a room bill in the amount of §1,171.99 in the name of Hunt Parker and had also used a stolen American Express credit card number to pay for the room and services. Simmons told Miller that he had found printouts in the room that the subject had been staying in and checked out of on September 21, 2009. The printouts included a confirmed room reservation at the Kitty Hawk Hilton for September 29, 2009." Compl. Ex. B.

3

On September 28, 2009, law enforcement officials, including Strickland and Drummond, arrived at the Kitty Hawk Hilton. Am. Compl. (DE 33) ¶ 14. Plaintiff, at that time, was standing outside of the front entrance waiting for a delivery from Pizza Hut. Id. Plaintiff then smiled and waived at the officers, entered the hotel, and went to room number 317. Id. Strickland and Detective Wade Styons ("Detective Styons") also proceeded into the hotel and spoke with Estes, who informed the officers that plaintiff was in room 317. Compl. p. 5.

At some point, a Pizza Hut delivery person arrived to make a delivery to room 317. Id. p. 8. Strickland asked to see a copy of the receipt and noted that the last four didgets of the American Express credit card used to purchase the pizza did not match the card used to pay for the room. Id. Strickland made a copy of the receipt for the delivery person, and retained the original. Id.

Approximately eight minutes after returning to his room, plaintiff heard a knock at his door with an announcement that it was Pizza Hut. Am. Compl. (DE 33) ¶ 15. Plaintiff then opened the door to find Detective Styons waiting outside. Id. Detective Styons asked plaintiff to identify himself, and Styons properly identified himself as Lance Goldman. Id. Styons then informed plaintiff that the room had been paid for with a stolen credit card, to which plaintiff responded that his friend Bryan Parker had purchased the room for him. Id. Plaintiff stated that if Styons' statement was true, he wished to gather his belongings and vacate the room. Id. ¶ 16. Styons remained outside of plaintiff's room while plaintiff began gathering his belongings. Id.

While plaintiff was gathering his belongings, Strickland and Drummond arrived at plaintiff's room, and immediately entered without plaintiff's permission. Id. Strickland asked plaintiff what he was doing, and plaintiff responded that he was gathering his things to remove them from the room. Id. Strickland then informed plaintiff that the room had been paid for with a stolen credit

4

card, placed him in handcuffs, and transported him to the Kitty Hawk Police Department for questioning. Id. Brittany Adams and Khiry Quinton, who were staying with plaintiff in the hotel room, also were transported to the police station. Compl. p. 7, 9, 10. At some point Strickland questioned Khiry Quinton, who informed Strickland that plaintiff had paid for the hotel room and directed the officers to plaintiff's vehicle. (DE 16), p. 5.

Following plaintiff's arrest, Strickland obtained from Magistrate Judge Brannon search warrants for the Hilton Garden Inn room 317 and a 1999 Mercury Mountaineer registered to plaintiff. Compl. p. 9. Plaintiff's request for copies of the search warrants was denied. Id. p. 10. During Strickland's search of plaintiff's hotel room and truck, "he found brand new clothes and 3 or 4 tags, and several shopping bags from Belks department store, along with a Belks purchase receipt." Id. pp. 11-12. Plaintiff states that Strickland misrepresented that he provided plaintiff an inventory list of the items seized in the search. Id. p. 10.

On December 7, 2009, plaintiff was charged with one felony count of financial transaction card fraud and two misdemeanor counts of financial transaction card fraud. Compl. Attach. p. 16. Plaintiff also was charged with one count of identity theft on December 7, 2009. Id. p. 18. The district attorney subsequently dismissed plaintiff's identity theft charge, but plaintiff was convicted of the remaining charges. See (DE 59), Ex. B.

A.   Standards of Review

The hotel defendants filed a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6). A motion to dismiss under Rule 12(b)(6) determines only whether a claim is stated; "it does not resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." Republican Party v. Martin, 980 F.2d 943, 952 (4th Cir. 1992). A claim is stated if the

5

complaint contains "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 677 (2009) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007)). In evaluating whether a claim is stated, "[the] court accepts all well-pled facts as true and construes these facts in the light most favorable to the plaintiff," but does not consider "legal conclusions, elements of a cause of action, . . . bare assertions devoid of further factual enhancement[,] . . . unwarranted inferences, unreasonable conclusions, or arguments." Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc., 591 F.3d 250, 255 (4th Cir. 2009) (citations omitted). In other words, this plausibility standard requires a plaintiff to articulate facts, that, when accepted as true, demonstrate that the plaintiff has stated a claim that makes it plausible he is entitled to relief. Francis v. Giacomelli, 588 F.3d 186, 193 (4th Cir. 2009) (quotations omitted).

Drummond and Strickland filed a motion for judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c). Rule 12(c) allows a party to move for judgment on the pleadings, "after the pleadings are closed–but early enough not to delay trial. . . ." Fed. R. Civ. P 12(c). In reviewing a motion for judgment on the pleadings, the court applies "the same standard" as for motions made pursuant to Rule 12(b)(6). Burbach Broad Co. v. Elkins Radio Corp., 278 F.3d 401, 406 (4th Cir. 2002). Thus, when a party moves for judgment on the pleadings pursuant to Rule 12(c), the factual allegations of the complaint are taken as true, whereas those of the answer are taken as true only to the extent that they have not been denied or do not conflict with those in the complaint. Pledger v. North Carolina Dep't of Health and Human Services, 7 F. Supp. 2d 705, 707 (E.D.N.C. 1998). A federal district court considering a motion to dismiss for failure to state a claim must view the allegations of the claim in the light most favorable to the non-moving party. See Ibarra v. United States, 120 F.3d 472, 474 (4th Cir. 1997). To survive a motion to dismiss, the

6

complaint must contain "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft, 556 U.S. at 678; Twombly, 550 U.S. at 570.

B.   Analysis

   1.   The Hotel Defendants' First Motion to Dismiss

      a.   Claims Pursuant to § 1983

To state a claim against the hotel defendants pursuant to § 1983, plaintiff must aver that a person acting under color of state law deprived him of a constitutional right or a right conferred by a law of the United States. See Dowe v. Total Action Against Poverty, 145 F.3d 653, 658 (4th Cir. 1998). Accordingly, the party charged with a constitutional deprivation must be a state actor. Holly v. Scott, 434 F.3d 287, 291-92 (4th Cir. 2006); Debauche v. Trani, 191 F.3d 499, 506-507 (4th Cir. 1999). Private conduct constitutes state action only if it is "fairly attributable to the State." Lugar v. Edmondson Oil Co., 457 U.S. 922, 937 (1982); Holly, 434 F.3d at 291. Here, plaintiff has not alleged any conduct on behalf of the hotel defendants that is fairly attributable to the State; accordingly, the court GRANTS the hotel defendants' motion to dismiss this claim. See, e.g., Howard v. Food Lion, Inc., 232 F. Supp.2d 585, 597 (M.D.N.C. 2002) ("Section 1983 provides legal redress to those whose constitutional rights have been violated by state or local government actors . . . Because neither Food Lion nor its store managers acted under color of state law, plaintiff's § 1983 claim against the Food Lion Defendants will be dismissed."); Moldowan v. City of Warren, 578 F.3d 351, 399 (6th Cir. 2009) ("Providing information to the police, responding to questions about a crime, and offering witness testimony at a criminal trial does not expose a private individual to liability for actions taken 'under the color of [state] law.'"); Benavidez v. Gunnell, 722 F.2d 615, 618 (10th Cir. 1983) (reporting a crime is not action under the color of state law as that term is

7

defined in § 1983); Butler v. Goldblatt Bros., Inc., 589 F.2d 323, 327 (7th Cir. 1978) (merely supplying information to police officers who then act on their own initiative in arresting the plaintiff does not expose a private party to liability under § 1983).

    b.  Financial Privacy Act Claims

Plaintiff alleges claims against the hotel defendants pursuant to the Federal Right to Privacy Act, 12 U.S.C. § 3401, *et seq.* and the North Carolina Financial Privacy Act, N.C. Gen. Stat. § 53B-1, *et seq.* (collectively referred to as the "Financial Privacy Acts"). The Financial Privacy Acts, however, only apply to "financial institutions" and their "officers, employees or agents. See 12 U.S.C. § 3403 ("No financial institution, or officer, employees, or agent of a financial institution, may provide to any Government authority access to or copies of, or the information contained in, the financial records of any customer except in accordance with the provisions of this chapter."); N.C. Gen. Stat. § 53B-8 ("No financial institution or its officer, employee, or agent may disclose a customer's financial record to a government authority except as provided in this Chapter.") The hotel defendants are not officers, employees, or agents of a financial institution as defined by the Financial Privacy Acts. See 12 U.S.C. § 3401(1); N.C. Gen. Stat. § 53B-2(2). Thus, the Financial Privacy Acts do not apply to plaintiff under the facts of this case.

Even if the hotel defendants did qualify as officers, employees or agents of a financial institution, plaintiff still fails to state a claim pursuant to the Financial Privacy Acts because both Acts allow the alleged conduct of the hotel defendants in that they permit the reporting of suspected illegal activity to law enforcement and providing law enforcement with the basic background information related to the suspected illegal activity. See 12 U.S.C. § 3403(c); N.C. Gen. Stat. § 53B-8; see, e.g., Giannone v. Bank of America, 812 F. Supp.2d 216, 223-27 (E.D.N.Y. 2011) (concluding

8

that Bank of America was permitted under the federal Right to Financial Privacy Act to release the plaintiff's name, social security number, driver's license number, address, account number and account history to law enforcement in order to help reveal the nature of the plaintiff's suspected illegal activity and dismissing the plaintiff's complaint seeking relief under the Act). Additionally, the Financial Privacy Acts only afford remedies to the customer to whom the financial records relate. 12 U.S.C. § 3417(a), (d); N.C. Gen. Stat. § 53B-10(a). Plaintiff does not allege that his financial records were disclosed. Based upon the foregoing, the court grants the hotel defendants' motion to dismiss plaintiff's claims pursuant to the Financial Privacy Acts.

        c.        Claims Pursuant to the Gramm-Leach-Bliley Act

As with the Financial Privacy Acts, the Gramm-Leach-Bliley Act only applies to financial institutions. See 15 U.S.C. § 6801(a) ("It is the policy of the Congress that each financial institution has an affirmative and continuing obligation to respect the privacy of its customers and to protect the security and confidentiality of those customers' nonpublic personal information.") As stated, the hotel defendants are not financial institutions as defined by the Gramm-Leach-Bliley Act. See 15 U.S.C. § 6809(3); and 12 U.S.C. § 1843(k). Plaintiff, additionally, fails to state a claim pursuant to the Gramm-Leach-Bliley Act because it does not provide a private right of action. Dunmire v. Morgan Stanley DW, Inc., 475 F.3d 956, 960 (8th Cir. 2007); Shirley v. Buonassissi Henning & Lash, P.C., No. 11-CV-304-AW, 2011 WL 4352106, at *5 (D. Md. Sept. 15, 2011); Newcomb v. Cambridge Home Loans, Inc., 861 F. Supp.2d 1153, 1163 (D. Hawaii Mar. 20, 2012). Thus, the court GRANTS the hotel defendants' motion to dismiss this claim.

9

d.     Fair Credit Reporting Act Claim

Plaintiff alleges a claim pursuant to 15 U.S.C. § 1681g of the Fair Credit Reporting Act. Section 1681g describes the duty that a credit reporting agency has to disclose information to a victim of identity theft.  See 15 U.S.C. § 1681g(e)(5); Novak v. Experian Information Solutions, Inc., 782 F. Supp.2d. 617, n. 7 (N.D. Ill. Feb. 25, 2011).  Fred J. Charpentier, and not plaintiff, was the victim of identity theft in this case.  Thus, plaintiff fails to state a claim pursuant to the Fair Credit Reporting Act.

e.     Truth in Lending Act Claims

Plaintiff alleges a claim pursuant to 15 U.S.C. § 1643 of the Truth in Lending Act.  Section 1643 addresses the liability of the cardholder in the event of the unauthorized use of his/her credit card.  This provision is intended to protect credit cardholders by limiting their liability for fraudulent purchases made with a credit card.  See, e.g., Azur v. Chase Bank, 601 F.3d 212, 217-18 (3rd Cir. 2010) ("[T]he statute's plain meaning places a ceiling on a cardholder's obligations under the law and thus limits a card issuer's ability to sue a cardholder to recover fraudulent purchases.")  Fred J. Charpentier, and not plaintiff, was the credit cardholder in this case.  As a result, plaintiff fails to state a claim upon which relief may be granted, and the court GRANTS the hotel defendants' motion to dismiss this claim.[5]

f.     Non-Statutory Claims

Plaintiff asserts several non-statutory claims arising under North Carolina state law, including claims for negligence and breach of contract.  A district court may decline to exercise

---

[5] To the extent plaintiff alleges a cause of action pursuant to the various statutory provisions discussed above in relation to Strickland and Drummond, for the same reasons set forth above, the court GRANTS the motion for judgment on the pleadings as to these claims.

10

supplemental jurisdiction over a claim if the district court dismisses all claims over which it had original jurisdiction. 28 U.S.C. § 1367(c)(3); see Shanaghan v. Cahill, 58 F.3d 106, 110 (4th Cir. 1995). The court has dismissed plaintiff's federal claims, which were the sole claims over which it had original jurisdiction. In the interest of judicial economy, fairness, and comity, the court will not exercise supplemental jurisdiction over plaintiff's state law negligence claims. Thus, plaintiff's state law claims are dismissed without prejudice.

      2.      The Hotel Defendants' Second Motion to Dismiss

Plaintiff filed a motion to supplement his complaint on June 19, 2013, which does not assert any new causes of action against the hotel defendants. The hotel defendants subsequently moved to dismiss plaintiff's supplemental complaint. Because the supplemental complaint does not allege any new causes of action against the hotel defendants and because the court has determined that plaintiff failed to state a cause of action against the hotel defendants, the hotel defendants' second motion to dismiss is DENIED as moot.

      3.      The Motion for Judgment on the Pleadings Filed by Strickland and Drummond

Strickland and Drummond assert the defense of qualified immunity. Government officials are entitled to qualified immunity from civil damages so long as "their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982). In other words, a government official is entitled to qualified immunity when (1) the plaintiff has not demonstrated a violation of a constitutional right, or (2) the court concludes that the right at issue was not clearly established at the time of the official's alleged misconduct. Pearson v. Callahan, 555 U.S. 223, 236 (2009).

a. Probable Cause

Plaintiff alleges that Strickland and Drummond did not have probable cause to arrest him for financial card fraud or identity theft without a warrant.[6] To recover damages for an allegedly unconstitutional conviction or imprisonment, or for other harm caused by actions whose unlawfulness would render a conviction or sentence invalid, the plaintiff must show that the underlying conviction has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal, or called into question by a federal court's issuance of a writ of habeas corpus. Heck v. Humphrey, 512 U.S. 477, 486-87 (1994); Wilkinson v. Dotson, 544 U.S. 74, 81-82 (2005) (noting that Heck applies regardless of the type of relief sought); Rankin v. Cranford, No. 5:03CV99-2-V, 2005 WL 3279983, *3 (W.D.N.C. Apr. 11, 2005) (finding that claims predicated upon having been illegally investigated, prosecuted, and convicted are barred pursuant to Heck), aff'd, 142 F. App'x 166 (4th Cir. Aug. 25, 2005); Toomer v. Bilancone, No. C/A No. 2:13-176-DCN-BHH, 2013 WL 789858, at *3 (D.S.C. Jan. 25, 2013) (dismissing false arrest claim without prejudice as barred pursuant to Heck).

Here, plaintiff's identity theft charge was terminated in his favor. Thus, plaintiff's challenge to probable cause for this charge is not Heck barred. See Strickland and Drummond Answ. As for

---

[6] To the extent plaintiff challenges the arrest of either Brittany Adams and Khiry Quinton, the court finds that plaintiff has not provided sufficient factual support for such a claim. See Cochran v. Morris, 73 F.3d 1310, 1317 (4th Cir. 1996); White v. White, 886 F.2d 721, 723 (4th Cir. 1989) (dismissing complaint where it "failed to contain any factual allegations tending to support [plaintiff's] bare assertion . . . .") Nor does plaintiff have standing to challenge the arrests of Brittany Adams or Khiry Quinton. See Hein v. Freedom From Religion Foundation, Inc., 127 S.Ct. 2553, 2562 (2007) (stating that Article III of the United States Constitution provides that federal courts only have standing to decide actual cases or controversies); Clay v. Bowles, 248 F.3d 1138, at *1 (5th Cir. Jan. 19, 2001) (finding that parents did not have standing to challenge the arrest of their daughter at their home).

12

plaintiff's three financial card fraud charges, plaintiff was convicted of all three counts. See Strickland and Drummond Answ. Plaintiff does not allege that his conviction or punishment has been invalidated. Accordingly, he is unable to meet the Heck requirements for his probable cause challenge to his arrest for financial identity fraud, and his claims regarding his financial card fraud arrest are DISMISSED without prejudice.

The court now turns to the issue of probable cause for plaintiff's identity theft arrest. Generally, "an indictment, 'fair upon its face,' returned by a 'properly constituted grand jury,' conclusively determines the existence of probable cause." Gerstein v. Pugh, 420 U.S. 103, 117 n.19 (1975) (internal quotations omitted). Nevertheless, "a grand jury's decision to indict will [not] shield a police officer who deliberately supplied misleading information that influenced a decision." See, e.g., Goodwin v. Metts, 885 F.2d 157, 162 (4th Cir. 1989) (quoting Jones v. City of Chicago, 856 F.2d 985, 993 (7th Cir. 1988)), overruled in part by, Albright v. Oliver, 510 U.S. 266 (1994).[7] Because plaintiff alleges that Strickland and Drummond made false representations in order to obtain an indictment, the court examines whether plaintiff's arrest was made with probable cause.

Seizure of an individual without probable cause is unreasonable and violates the Fourth Amendment to the United States Constitution. Miller v. Prince George's County, 475 F.3d 621, 627 (4th Cir. 2007). "For probable cause to exist, there need only be enough evidence to warrant the belief of a reasonable officer that an offense has been or is being committed; evidence sufficient to convict is not required." Brown v. Gilmore, 278 F.3d 362, 367 (4th Cir. 2002). To determine the

---

[7] To the extent plaintiff alleges a claim for false arrest, such a claim is meritless. Generally, "there is no cause of action for 'false arrest' under section 1983 unless the arresting officer lacked probable cause." Street v. Surdyka, 492 F.2d 368, 372-73 (4th Cir. 1974). Here, as discussed infra, Strickland and Drummond had probable cause to arrest plaintiff.

13

existence of probable cause, courts must examine "the totality of the circumstances known to the officer" leading up to the time of arrest. Id. The court must "then decide whether these historical facts, viewed from the standpoint of an objectively reasonable police officer, amount to probable cause." Maryland v. Pringle, 540 U.S. 366, 371 (2003) (citations omitted). Accordingly, "an arresting officer's state of mind (except for the facts that he knows) is irrelevant to the existence of probable cause." Devenpeck v. Alford, 543 U.S. 146, 153 (2004).

Plaintiff's claims of false misrepresentations aside, the undisputed facts are sufficient to establish that a reasonable law enforcement officer would have believed that plaintiff was involved in identity theft in violation of N.C. Gen. Stat. § 14-113.20 on the date of his arrest.[8] Namely, Miller, the manager of the Kitty Hawk Hilton received a call from the manager of the Winston Salem Hilton describing suspected illegal activity-- that payment of Bryan Parker's bill at the Kitty Hawk Hilton could have been made with a stolen credit card. Compl. p. 4. Miller then called the police to report the suspected criminal activity. Supplemental Compl. (DE 16, p. 2). Plaintiff, was waiting in the lobby of the hotel for a pizza delivery when law enforcement officials arrived, but went back into the hotel soon thereafter. Compl. p. 4. Strickland recognized plaintiff because he had arrested plaintiff on prior occasions. Id. Attach. p. 2.

After arriving, the officers entered the hotel. Id. Strickland then verified with the Kitty Hawk Hilton employees that the person Strickland knew to be the plaintiff was the same person who

---

[8] A person is guilty of identity theft when that person "knowingly obtains, possesses, or uses identifying information of another person, living or dead, with the intent to fraudulently represent that the person is the other person . . . for the purpose of making financial or credit transactions in the other person's name, to obtain anything of value, benefit, or advantage, or for the purpose of avoiding legal consequences." N.C. Gen. Stat. § 14-113.20. Identifying information for the purposes of this statute includes "[c]redit card numbers[,]." N.C. Gen. Stat. § 14-113.20(b)(1).

14

checked in under the Bryan Parker reservation. Id. The hotel had a copy of the Kitty Hawk Hilton registration card, which plaintiff admits he signed using the name Bryan Parker.[9] Am. Comp. (DE 15) Ex. B.

The court finds that the foregoing facts are sufficient for a reasonable officer to believe that plaintiff was using the identifying information of another person to pay for the hotel room. Plaintiff's contention that Strickland and Drummond falsely misrepresented that Miller contacted American Express to determine whether the card was stolen prior to calling law enforcement officials or that Strickland verified that the card was stolen prior to plaintiff's arrest are immaterial to this analysis. Further, although plaintiff proffered an arguably plausible explanation for his presence in the fraudulently purchased hotel room, the officers were not bound to credit plaintiff's explanation prior to arresting him. See, e.g., Caceres v. Port Authority of New York and New Jersey, 631 F.3d 620, 623 (2nd Cir. 2011) (finding that the police were not bound to credit the plaintiff's explanation and profession of innocence). Finally, "even if the existence of probable cause were a close question, the 'qualified immunity standard gives ample room for mistaken judgments." Durham v. Horner, 690 F.3d 183, 189 (4th Cir. 2012) (quoting Henry v. Purnell, 652 F.3d 524, 531 (4th Cir. July 14, 2011). Given the existence of probable cause for plaintiff's arrest, plaintiff cannot maintain his § 1983 claims challenging his arrest, as a matter of law.

To the extent plaintiff argues that Strickland and Drummond lacked probable cause to arrest him because his offenses were misdemeanors, "[a] warrantless arrest of an individual . . . [for] a

---

[9] According to plaintiff, Drummond's pretrial false misrepresentation consisted of his statement that Miller had informed him that Miller contacted American Express and confirmed that the card at issue was stolen. Plaintiff states that this statement was proven false when Miller testified at trial that his report to law enforcement officers consisted of only suspected illegal activity. This fact, however, does not alter the court's probable cause analysis.

misdemeanor committed in the officer's presence, is consistent with the Fourth Amendment if the arrest is supported by probable cause." Maryland v. Pringle, 540 U.S. 366, 370 (2003). Here, as stated, Strickland and Drummond had probable cause to believe that a crime was being committed at the time plaintiff was arrested. Thus, whether the offenses were misdemeanors or felonies has no bearing on the probable cause analysis.[10]

  b. Unlawful Search

Plaintiff argues that the search of his vehicle subsequent to his arrest violated the Fourth Amendment, and that the alleged unlawful search resulted in the discovery of evidence used to convict him of financial transaction fraud. As stated, plaintiff was convicted of three counts of financial transaction fraud, and he has not demonstrated that these convictions have been reversed or otherwise invalidated. Thus, this claim is barred pursuant to the United States Supreme Court's ruling in Heck, and is DISMISSED without prejudice. Heck, 512 U.S. at 486-87.

Even if plaintiff's Fourth Amendment claim was not barred by Heck, plaintiff still would not be entitled to relief. Particularly, plaintiff alleges that a search warrant was obtained to search plaintiff's vehicle. (DE 65 ¶¶ 1, 2 and Ex. B). Plaintiff does not allege that the search warrant for his vehicle was facially invalid or that it was obtained under false pretenses. A valid search warrant carries a "presumption of legality." Anglin v. Director, Patuxent Institution, 439 F.2d 1342, 1346 (4th Cir. 1971). Because plaintiff does not allege facts necessary to rebut the search warrant's presumption of legality, he fails to state a claim.

---

[10] Plaintiff has presented documentation that at least one of his financial transaction card fraud charges was a felony. See Compl. Attach. p. 16.

16

Case 5:11-ct-03051-FL   Document 78   Filed 09/17/13   Page 16 of 19

c.  Perjury

As for plaintiff's allegations that Strickland and Drummond committed perjury in the course of plaintiff's criminal trial, plaintiff again fails to state a claim because police officers are immune from an action arising under § 1983 for alleged perjury. Briscoe v. LaHue, 460 U.S. 325, 342-46 (1983); Smith v. McCarthy, 349 F. App'x 851, 858, n.10 (4th Cir. Oct. 28, 2009). Thus, the court DISMISSES this claim.

d.  Malicious Prosecution/False Arrest

To the extent plaintiff asserts that Strickland and Drummond falsely arrested him in violation of the Fourth Amendment, his claim is without merit. To establish a Fourth Amendment false arrest or malicious prosecution claim, the plaintiff must establish that probable cause did not exist for his arrest. Brooks v. City of Winston-Salem, 85 F.3d 178, 183 (4th Cir. 1996). As stated, Strickland and Drummond had probable cause to arrest plaintiff. Thus, plaintiff fails to state a claim for false arrest or malicious prosecution, and these claims are DISMISSED.

e.  Deprivation of Property

To the extent plaintiff alleges that certain items of personal property seized pursuant to the search warrants were lost, confiscated or stolen by prison officials, a prisoner may not bring a federal claim for deprivation of property through the "random and unauthorized" acts of government officers, whether negligent or intentional, when state law provides an adequate remedy. Hudson v. Palmer, 468 U.S. 517, 533 (1984); Francis v. State of Md., 820 F.2d 1219, at *1 (4th Cir. June 1, 1987) (finding that claims of unlawful conversion or negligent loss involving items seized from a car by law enforcement officers fails to state a claim under § 1983); Calhoun-El v. Maynard, No. RDB-07-220, 2007 WL 5254010, at *n.9 (D. Md. Nov. 19, 2007), aff'd, 267 F. App'x 252 (4th Cir.

17

Feb. 27, 2008). North Carolina has adequate post-deprivation remedies for the confiscation or destruction of property, such as a tort action for conversion against individual defendants. See Cathey v. Guenther, 47 F.3d 162, 164 (5th Cir. 1995); Gallimore v. Sink, 27 N.C. App. 65, 66; 218 S.E.2d 181, 182 (1975). Thus, this claim is DISMISSED without prejudice.

   f.  Access to Courts

Plaintiff contends that Strickland seized "important court documents" in the course of his search of plaintiff's vehicle. Compl. p. 10. Plaintiff states that the allegedly seized documents, which included a plea offer in another criminal action, were "crucial to [his] motion for appropriate relief hearing in file number 07 crs 425, which was denied." Id. p. 11.

In order to state a claim for denial of access to the courts, the inmate must show actual injury or that a defendant's conduct hindered his efforts to pursue a legal claim. See, e.g., Lewis v. Casey, 518 U.S. 343, 351–52 (1996); Michau v. Charleston County, 434 F.3d 725, 728 (4th Cir. 2006). The Supreme Court held in Lewis that inmates must be provided "a reasonably adequate opportunity to present claimed violations of fundamental constitutional rights to the courts." Lewis, 518 U.S. at 351 (quotation omitted). The right to access the courts extends to direct criminal appeals, habeas corpus proceedings, and civil rights actions challenging conditions of confinement. Id. at 354-55. The actual injury requirement mandates that an inmate "demonstrate that a nonfrivolous legal claim had been frustrated or impeded." Id. at 353. The Court did not extend the holding to include the right to "*litigate effectively* once in court." Id. at 354 (disclaiming language in Bounds v. Smith, 430 U.S. 817, 825 (1977), suggesting otherwise) (emphasis in original).

In this case, plaintiff states that the document was necessary for his motion for appropriate relief hearing in another action. Plaintiff, however, does not state why the document was necessary,

Case 5:11-ct-03051-FL   Document 78   Filed 09/17/13   Page 18 of 19

nor does he identify the particular claim in his motion for appropriate relief that he contends was impeded by the alleged seizure. The court finds that plaintiff's conclusory assertions are insufficient to state a claim for denial of access to courts. See Michau, 434 F.3d at 728 (finding that denial of access to courts claim fails because the plaintiff did not specifically explain how he was injured by any limitations on his access to the law library); Harden v. Bodiford, 442 F. App'x 893, 896 (4th Cir. Aug. 11, 2011) (finding that an inmate cannot rely on conclusory allegations to establish a claim of denial of access to the courts). Thus, the court DISMISSES this claim.

## CONCLUSION

For the foregoing reasons, the hotel defendants' first motion to dismiss (DE 37) is GRANTED and the motion for judgment on the pleadings (DE 42) also is GRANTED. The hotel defendants' second motion to dismiss (DE 75) is DENIED as moot. Plaintiff's state law claims, deprivation of property claim, and Heck barred claims are DISMISSED without prejudice. The court alternatively DISMISSES the allegations in plaintiff's June 19, 2013, supplemental/amended complaint pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii) ("[T]he court shall dismiss the case at any time if the court determines that–the action . . . fails to state a claim on which relief may be granted . . ."). The Clerk of Court is DIRECTED to substitute Amanda Estes for Amanda Mullens in the caption of this case. The clerk also is DIRECTED to close this case.

SO ORDERED, this the 17th day of September, 2013.

LOUISE W. FLANAGAN
United States District Judge